# UNITED STATES *v.* RODGERS

No. 83–620.   Argued March 27, 1984—Decided April 30, 1984

REHNQUIST, J., delivered the opinion for a unanimous Court.

*Barbara E. Etkind* argued the cause for the United States. With her on the briefs were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey,* and *Joel M. Gershowitz.*

*Albert N. Moskowitz,* by appointment of the Court, 464 U. S. 1067, argued the cause for respondent. With him on the brief was *Raymond C. Conrad, Jr.*

JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Larry Rodgers was charged in a two-count indictment with making "false, fictitious or fraudulent state-ments" to the Federal Bureau of Investigation (FBI) and the United States Secret Service, in violation of 18 U. S. C. § 1001.[1] Rodgers allegedly lied in telling the FBI that his wife had been kidnaped and in telling the Secret Service that his wife was involved in a plot to kill the President. Rodgers moved to dismiss the indictment for failure to state

---

[1] Title 18 U. S. C. § 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

an offense on the grounds that the investigation of kidnapings and the protection of the President are not matters "within the jurisdiction" of the respective agencies, as that phrase is used in § 1001. The District Court for the Western District of Missouri granted the motion, and the United States Court of Appeals for the Eighth Circuit affirmed. We now reverse. The statutory language clearly encompasses criminal investigations conducted by the FBI and the Secret Service, and nothing in the legislative history indicates that Congress intended a more restricted reach for the statute.

On June 2, 1982, Larry Rodgers telephoned the Kansas City, Missouri, office of the FBI and reported that his wife had been kidnaped. The FBI spent over 100 agent hours investigating the alleged kidnaping only to determine that Rodgers' wife had left him voluntarily. Two weeks later, Rodgers contacted the Kansas City office of the Secret Service and reported that his "estranged girlfriend" (actually his wife) was involved in a plot to assassinate the President. The Secret Service spent over 150 hours of agent and clerical time investigating this threat and eventually located Rodgers' wife in Arizona. She stated that she left Kansas City to get away from her husband. Rodgers later confessed that he made the false reports to induce the federal agencies to locate his wife.

In granting Rodgers' motion to dismiss the indictment, the District Court considered itself bound by a prior decision of the Eighth Circuit in *Friedman* v. *United States*, 374 F. 2d 363 (1967). *Friedman* also involved false statements made to the FBI to initiate a criminal investigation. In that case, the Court of Appeals reversed the defendant's conviction under § 1001, holding that the phrase "within the jurisdiction," as used in that provision, referred only to "the power to make final or binding determinations." *Id.*, at 367.

The *Friedman* court noted that the current statutory language was first passed in 1934 at the urging of some of the newly created regulatory agencies. See S. Rep. No. 1202, 73d Cong., 2d Sess. (1934). A predecessor provision pun-

ished false statements only when made "for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States." Act of Oct. 23, 1918, ch. 194, 40 Stat. 1015. In 1934, Congress deleted the requirement of a specific purpose and enlarged the class of punishable false statements to include false statements made "in any matter within the jurisdiction of any department or agency of the United States." Act of June 18, 1934, ch. 587, 48 Stat. 996. The "immediate and primary purpose" of this amendment, the Eighth Circuit surmised, was to curtail the flow of false information to the new agencies, which was interfering with their administrative and regulatory functions.

> "Though the statute was drafted in broad inclusive terms, presumably due to the numerous agencies and the wide variety of information needed, there is nothing to indicate that Congress intended this statute to have application beyond the purposes for which it was created." 374 F. 2d, at 366.

Reading the term "jurisdiction" in this restrictive light, the Court of Appeals included within its scope the "power to make monetary awards, grant governmental privileges, or promulgate binding administrative and regulative determinations," while excluding "the mere authority to conduct an investigation in a given area without the power to dispose of the problems or compel action." *Id.*, at 367. The court concluded that false statements made to the FBI were not covered by § 1001 because the FBI "had no power to adjudicate rights, establish binding regulations, compel the action or finally dispose of the problem giving rise to the inquiry." *Id.*, at 368.

In the present case, the Court of Appeals adhered to its decision in *Friedman* and affirmed the dismissal of the indictment. The court acknowledged that two other Courts of Appeals had expressly rejected the reasoning of *Friedman.* See *United States* v. *Adler,* 380 F. 2d 917, 922 (CA2), cert.

denied, 389 U. S. 1006 (1967); *United States* v. *Lambert,* 501 F. 2d 943, 946 (CA5 1974) (en banc). But the Eighth Circuit found its own analysis more persuasive. We granted certiorari to resolve this conflict. 464 U. S. 1007 (1983).

It seems to us that the interpretation of § 1001 adopted by the Court of Appeals for the Eighth Circuit is unduly strained. Section 1001 expressly embraces false statements made "in *any* matter within the jurisdiction of *any* department or agency of the United States." (Emphasis supplied.) A criminal investigation surely falls within the meaning of "any matter," and the FBI and the Secret Service equally surely qualify as "department[s] or agenc[ies] of the United States." The only possible verbal vehicle for narrowing the sweeping language Congress enacted is the word "jurisdiction." But we do not think that that term, as used in this statute, admits of the constricted construction given it by the Court of Appeals.

"Jurisdiction" is not defined in the statute. We therefore "start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards* v. *United States,* 369 U. S. 1, 9 (1962). The most natural, nontechnical reading of the statutory language is that it covers all matters confided to the authority of an agency or department. Thus, Webster's Third New International Dictionary 1227 (1976) broadly defines "jurisdiction" as, among other things, "the limits or territory within which any particular power may be exercised: sphere of authority." A department or agency has jurisdiction, in this sense, when it has the power to exercise authority in a particular situation. See *United States* v. *Adler, supra,* at 922 ("the word 'jurisdiction' as used in the statute must mean simply the power to act upon information when it is received"). Understood in this way, the phrase "within the jurisdiction" merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body.

There are of course narrower, more technical meanings of the term "jurisdiction." For example, an alternative definition provided by Webster's is the "legal power to interpret and administer the law." See also Black's Law Dictionary 766 (5th ed. 1979). But a narrow, technical definition of this sort, limiting the statute's protections to judicial or quasi-judicial activities, clashes strongly with the sweeping, everyday language on either side of the term. It is also far too restricted to embrace some of the myriad governmental activities that we have previously concluded § 1001 was designed to protect. See, *e. g.*, *Bryson* v. *United States*, 396 U. S. 64 (1969) (affidavit filed by union officer with National Labor Relations Board falsely denying affiliation with Communist Party); *United States* v. *Bramblett*, 348 U. S. 503 (1955) (fraudulent representations by Member of Congress to Disbursing Office of House of Representatives); *United States* v. *Gilliland*, 312 U. S. 86 (1941) (false reports filed with Secretary of Interior on amount of petroleum produced from certain wells).

In all our prior cases interpreting this statutory language we have stressed that "the term 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001." *Bryson* v. *United States, supra,* at 70 (citing *United States* v. *Adler, supra*). For example, in *United States* v. *Gilliland, supra,* at 91, we rejected a defendant's contention that the reach of the statute was confined "to matters in which the Government has some financial or proprietary interest." We noted that the 1934 amendment, which added the current statutory language, was not limited by any specific set of circumstances that may have precipitated its passage.

> "The amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described. We see no reason why this apparent intention should be frustrated by construction." 312 U. S., at 93.

Discussing the same amendment in *United States* v. *Bramblett, supra,* at 507, we concluded: "There is no indication in either the committee reports or in the congressional debates that the scope of the statute was to be in any way restricted." And in *Bryson* v. *United States, supra,* at 70–71, we noted the "valid legislative interest in protecting the integrity of official inquiries" and held that a "statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under § 1001."[2]

There is no doubt that there exists a "statutory basis" for the authority of the FBI and the Secret Service over the investigations sparked by respondent Rodgers' false reports. The FBI is authorized "to detect and prosecute crimes against the United States," including kidnaping. 28 U. S. C. § 533(1). And the Secret Service is authorized "to protect the person of the President." 18 U. S. C. § 3056. It is a perversion of these authorized functions to turn either agency into a Missing Person's Bureau for domestic squabbles. The knowing filing of a false crime report, leading to an investigation and possible prosecution, can also have grave consequences for the individuals accused of crime. See *United States* v. *Adler,* 380 F. 2d, at 922; *Friedman* v. *United States,* 374 F. 2d, at 377 (Register, J., dissenting). There is, therefore, a "valid legislative interest in protecting

---

[2] Both respondent and the court below attempt to distinguish *Bryson* on the ground that the NLRB, unlike the FBI or the Secret Service, "is an agency with the power to adjudicate rights and establish regulations . . . ." App. to Pet. for Cert. 4a. See Brief for Respondent 16. But it is undisputed that in the matter at issue in *Bryson,* the NLRB was neither adjudicating rights nor establishing regulations. It was conducting an "official inquiry" or investigation, just as the FBI and the Secret Service were doing in the instant case. Unless one is simply to read the phrase *"any* department or agency of the United States" out of the statute, there is no justification for treating the investigatory activities of one agency as within the scope of § 1001 while excluding the same activities performed by another agency.

the integrity of [such] official inquiries," an interest clearly embraced in, and furthered by, the broad language of § 1001.

Limiting the term "jurisdiction" as used in this statute to "the power to make final or binding determinations," as the Court of Appeals thought it should be limited, would exclude from the coverage of the statute most, if not all, of the authorized activities of many "departments" and "agencies" of the Federal Government, and thereby defeat the purpose of Congress in using the broad inclusive language which it did. If the statute referred only to courts, a narrower construction of the word "jurisdiction" might well be indicated; but referring as it does to "any department or agency" we think that such a narrow construction is simply inconsistent with the rest of the statutory language.

The Court of Appeals supported its failure to give the statute a "literal interpretation" by offering several policy arguments in favor of a more limited construction. For example, the court noted that § 1001 carries a penalty exceeding the penalty for perjury[3] and argued that Congress could not have "considered it more serious for one to informally volunteer an untrue statement to an F. B. I. agent than to relate the same story under oath before a court of law." *Friedman* v. *United States, supra,* at 366. A similar argument was made and rejected in *United States* v. *Gilliland,* 312 U. S., at 95. The fact that the maximum possible penalty under § 1001 marginally exceeds that for perjury provides no indication of the particular penalties, within the permitted range, that Congress thought appropriate for each of the myriad violations covered by the statute. Section 1001 covers "a

---

[3] In fact, the only difference between the two penalties lies in the maximum possible fine. Title 18 U. S. C. § 1621 sets the general penalty for perjury at a fine of not more than $2,000 or imprisonment for not more than five years, or both. Section 1001 provides a fine of not more than $10,000 or imprisonment for not more than five years, or both. Congress has also provided a penalty identical to that of § 1001 for the more specific crime of perjury "in any proceedings before . . . any court or grand jury of the United States." 18 U. S. C. § 1623(a).

variety of offenses and the penalties prescribed were maximum penalties which gave a range for judicial sentences according to the circumstances and gravity of particular violations." *Ibid.*

Perhaps most influential in the reasoning of the court below was its perception that "the spectre of criminal prosecution" would make citizens hesitant to report suspected crimes and thereby thwart "the important social policy that is served by an open line of communication between the general public and law enforcement agencies." *Friedman* v. *United States, supra,* at 369. But the justification for this concern is debatable. Section 1001 only applies to those who "knowingly and willfully" lie to the Government. It seems likely that "individuals acting innocently and in good faith, will not be deterred from voluntarily giving information or making complaints to the F. B. I." *United States* v. *Adler, supra,* at 922. See also *United States* v. *Lambert,* 501 F. 2d, at 946; *Friedman* v. *United States, supra,* at 377 (Register, J., dissenting).[4]

---

[4] The Eighth Circuit also expressed concern that a literal application of the statute would obviate the taking of oaths in judicial proceedings. "Since the Judiciary is an agency of the United States Government, a strict application of this statute would remove the time-honored and now necessary formality of requiring witnesses to testify under oath." *Friedman* v. *United States,* 374 F. 2d, at 367. Several courts faced with that question have in fact held that § 1001 does not reach false statements made under oath in a court of law. See, *e. g., United States* v. *Abrahams,* 604 F. 2d 386 (CA5 1979); *United States* v. *D'Amato,* 507 F. 2d 26 (CA2 1974) (holding limited to private civil actions); *United States* v. *Erhardt,* 381 F. 2d 173 (CA6 1967) *(per curiam).* But they have mostly relied, not on a restricted construction of the term "jurisdiction," but rather on the phrase "department or agency." These courts have held that, although the federal judiciary is a "department or agency" within the meaning of § 1001 with respect to its housekeeping or administrative functions, the judicial proceedings themselves do not so qualify. *Abrahams, supra,* at 392–393; *Erhardt, supra,* at 175. See also *Morgan* v. *United States,* 114 U. S. App. D. C. 13, 16, 309 F. 2d 234, 237, cert. denied, 373 U. S. 917 (1962). We express no opinion on the validity of this line of cases.

Even if we were more persuaded than we are by these policy arguments, the result in this case would be unchanged. Resolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress. Its decision that the perversion of agency resources and the potential harm to those implicated by false reports of crime justifies punishing those who "knowingly and willfully" make such reports is not so "absurd or glaringly unjust," *Sorrells* v. *United States*, 287 U. S. 435, 450 (1932), as to lead us to question whether Congress actually intended what the plain language of § 1001 so clearly imports.

Finally, respondent urges that the rule of lenity in construing criminal statutes should be applied to § 1001, and that because the *Friedman* case has been on the books in the Eighth Circuit for a number of years a contrary decision by this Court should not be applied retroactively to him. The rule of lenity is of course a well-recognized principle of statutory construction, see, *e. g.*, *Williams* v. *United States*, 458 U. S. 279, 290 (1982), but the critical statutory language of § 1001 is not sufficiently ambiguous, in our view, to permit the rule to be controlling here. See *United States* v. *Bramblett*, 348 U. S., at 509–510. And any argument by respondent against retroactive application to him of our present decision, even if he could establish reliance upon the earlier *Friedman* decision, would be unavailing since the existence of conflicting cases from other Courts of Appeals made review of that issue by this Court and decision against the position of the respondent reasonably foreseeable.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*