**UNITED STATES of America, Plaintiff,**

v.

**Woodrow GILPIN, Defendant.**

**No. 87 CR 909.**

United States District Court,
N.D. Illinois, E.D.

Feb. 11, 1988.

---

1362

Michael J. Shepard, Zaldwaynaka L. Scott, U.S. Attorney's Office, U.S. Dept. of Justice, Chicago, Ill., for plaintiff.

Elliot M. Samuels, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

The defendant has filed five pretrial motions in this criminal action. For the reasons set forth below, each of these motions is denied.

### MOTION TO DISMISS COUNT SIX OF THE INDICTMENT OR, IN THE ALTERNATIVE, TO SEVER IT FROM THE REMAINING COUNTS

During an informal interview with an agent of the Federal Bureau of Investigation (FBI) on June 11, 1987, the defendant allegedly made certain false statements regarding the theft of his van in early November, 1985 and his subsequent insurance claim. At the time this interview transpired, the FBI suspected the defendant of participating in an insurance "give-up" scheme.[1] The defendant was indicted for his alleged participation in this scheme subsequent to this interview. That conduct is the subject of conspiracy and mail fraud charges contained in counts one through five of the indictment in this action.

---

1. By virtue of such a scheme, a vehicle owner arranges to have his vehicle "disappear," under the guise of being stolen, then reports the vehicle as stolen to the police, and makes a claim with his insurance company accordingly.

Based on the statements he made during his interview with the FBI agent, the defendant was also charged in count six of the indictment with violating 18 U.S.C. § 1001. Section 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001.

■ The defendant now urges this Court to dismiss count six of the indictment. He argues that Section 1001 does not apply to statements made by a defendant which merely amount to exculpatory denials of guilt. This restrictive interpretation of Section 1001 has become known as the "exculpatory no" doctrine. *See United States v. King*, 613 F.2d 670, 674 (7th Cir. 1980); *United States v. Isaacs*, 493 F.2d 1124, 1158 (7th Cir.1974), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974).

As the Government points out, in this circuit, the "exculpatory no" doctrine has been read very narrowly. *King*, 613 F.2d at 674. Its application is limited to "simple negative answers ... without affirmative discursive falsehood." *Id.; see also Isaacs*, 493 F.2d at 1158. The doctrine cannot be applied to "positive, affirmative statements

calculated to pervert the authorized functions of government." *Id.*

In this case, neither the defendant nor the Government has recounted the substance of the alleged statements in any detail. The defendant summarily asserts that during the interview in question, he "persisted in asserting that his van was stolen."[2] The Government merely counters with the assertion that "the allegations of the indictment ... do not on their face state that the lies told by the defendant came only in the form of negative answers." Thus, whether the defendant made these assertions by positive, affirmative statements, rather than by a series of "exculpatory no" answers to the FBI agent's questions, remains unclear. Nonetheless, in this Court's opinion, these sketchy allegations do not provide an adequate factual basis for dismissal of count six of the indictment based on the application of the "exculpatory no" doctrine.[3]

■ Moreover, even if the defendant had supported his motion with more factually detailed allegations, this Court still would be inclined to deny the motion, as it prematurely seeks to resolve an issue which turns on the specific facts of this case. As one court recently noted in denying a motion to dismiss an indictment charging a violation of Section 1001 based on the "exculpatory no" doctrine:

In effect, the defendant, rather than challenging the *sufficiency of the indictment*, is seeking a review of the *sufficiency of the government's evidence* prior to trial. At the motion to dismiss the indictment stage, however, we cannot decide as a matter of law something which turns on specific facts of this case. The

2. The defendant attaches no affidavit relating the substance of his conversation with the FBI agent, nor does he attach an FBI report which summarizes the details of the conversation. *See, e.g., United States v. Antonucci*, 663 F.Supp. 243, 245 (N.D.Ill.1987).

3. We note that the Supreme Court's decision in *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984) effectively renders an unduly narrow interpretation of Section 1001 questionable, if not obsolete. Reversing a ruling by the Eighth Circuit Court of Appeals, the Supreme Court in *Rodgers* rejected a limited

construction of the statute, acknowledged its broad, sweeping scope, and advocated a literal interpretation of its plain language. *Id.* at 480–82, 104 S.Ct. at 1946–47. Although the Court in *Rodgers* did not address the "exculpatory no" doctrine *per se*, its endorsement of a literal interpretation of Section 1001 certainly casts doubt upon the vitality of this judicially created doctrine and the line of cases supporting its application. *United States v. Stoffey*, 279 F.2d 924 (7th Cir.1960), the only Seventh Circuit case cited by defendant in support of his argument, falls into this category of questionable cases.

testimony at trial may be *precisely the same* as the FBI reports. Then again, it may not. In any event, an indictment sufficient on its face cannot be successfuly challenged on the basis that the government may not meet its burden of proof.

*United States v. Antonucci*, 663 F.Supp. 243, 245 (N.D.Ill.1987) (emphasis in original).

We agree with this reasoning. In this case, count six of the indictment contains the five essential elements of an offense charged under Section 1001. *See United States v. Petullo*, 709 F.2d 1178, 1180 (7th Cir.1983). Consequently, on its face, count six of the indictment is legally sufficient. *See Antonucci*, 663 F.Supp. at 245. The defendant's motion to dismiss is therefore denied.

■ In the alternative, the defendant moves to sever count six from the remaining counts of the indictment. In support of this motion, the defendant argues that the Section 1001 false statements charge in count six of the indictment bears little, if any, relationship to the conspiracy and mail fraud charges in the remaining counts of the indictment. The defendant also contends that requiring him to simultaneously defend the conspiracy and mail fraud charges and the Section 1001 false statements charge will impair his presumption of innocence and permit the jury to infer guilt based upon the opinions of the FBI agent who interviewed him, rather than the facts. This Court disagrees.

In deciding whether to grant or deny a severance, we must read Rule 8 of the Federal Rules of Criminal Procedure in conjunction with Rule 14 of the Federal Rules of Criminal Procedure and weigh the competing considerations of these rules. *See Isaacs*, 493 F.2d at 1160. Rule 8 promotes judicial economy and efficiency by liberally permitting joinder of two or more offenses in the same indictment if they are based on the same act or transaction, or on two or more acts or transactions connected together. Fed.R.Crim.P. 8(a). Rule 14, on the other hand, protects a defendant from prejudicial joinder. Fed.R.Crim.P. 14.

In this case, a balancing of the competing considerations of these rules favors joinder of the offenses. First, the offenses charged in counts one through five (conspiracy and mail fraud) arise out of the same overall transaction or insurance "give-up" scheme as the charge in count six (false statements under Section 1001). There is a logical relationship between both sets of charges. Second, counts one through five and count six will require common elements of proof, making a strong case for joinder. *See Isaacs*, 493 F.2d at 1159. Finally, we do not see how the FBI agent's testimony relating to the false statement will impair the defendant's presumption of innocence any more than the agent's testimony relating to the conspiracy and mail fraud charges. After hearing the evidence and receiving instructions on the applicable law, the jury can choose to believe or not believe that the defendant made false statements to the FBI within the ambit of Section 1001. Thus, the danger of unfair prejudice, if it exists at all, is minimal. For these reasons, this Court denies the defendant's motion to sever count six from the remaining counts of the indictment.

## MOTION TO PRODUCE EVIDENCE CONCERNING INDUCEMENTS, PROMISES AND COMPENSATION TO PROSPECTIVE GOVERNMENT WITNESSES

The defendant seeks an order requiring the Government to produce evidence concerning any inducements, promises, and compensation to prospective government witnesses, pursuant to the principles enunciated in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This motion is denied as moot based upon the Government's representation that it is unaware of the existence of any such information or materials, but will comply with its obligations to produce such information or materials if any become known.

## MOTION FOR DISCLOSURE OF EVIDENCE OF MOTIVE OR BIAS WHICH MAY LEAD TO THE IMPEACHMENT OF A GOVERNMENT WITNESS

The defendant also seeks an order requiring the Government to make inquiry and disclose all evidence which may lead to the impeachment of any government witnesses, in accordance with the dictates of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). This motion is also denied as moot based upon the Government's representation that it has already produced information within the scope of this request and recognizes its continuing obligation to do so should any additional information of this kind become known.

## MOTION FOR AN ORDER REQUIRING GOVERNMENT TO GIVE NOTICE OF ITS INTENTION TO USE OTHER CRIMES, WRONGS, OR ACTS AS EVIDENCE

■ The defendant seeks an order requiring the Government to give notice of its intention to use in its case-in-chief evidence of other crimes, wrongs, or acts pursuant to Rules 404(b) and 608(b) of the Federal Rules of Evidence. The Government has represented that it will comply with this request "as far in advance of trial as practicable." To the extent that the Government has done so, this motion is denied as moot. If, however, the Government has not given adequate notice of its intention to introduce such evidence, it will be foreclosed from using such evidence in its case-in-chief at trial.

## MOTION TO COMPEL THE GOVERNMENT TO ESTABLISH PRIOR TO TRIAL THE ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS

The defendant has requested an order compelling the Government to establish, by way of a written proffer prior to trial, the admissibility of co-conspirator statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence. In response, the Government has submitted a written proffer of the evidence it expects to adduce at trial to establish that a conspiracy existed; that the defendant participated in the conspiracy; and, that the co-conspirator statements sought to be introduced were made during the course of and in furtherance of the conspiracy.

As mentioned previously in this opinion, this case involves an insurance "give-up" scheme. The statements the Government seeks to introduce at trial pursuant to Rule 801(d)(2)(E) consist of tape recorded conversations between Donna Kratochvil, a co-conspirator to whom the defendant allegedly "surrendered" his van, and an undercover FBI agent, who bought the van from her. During these conversations, Kratochvil and the undercover FBI agent engaged in negotiations for the sale of the defendant's soon-to-be-surrendered van.

■ Pursuant to Rule 104(a) of the Federal Rules of Evidence, before admitting these statements into evidence, this Court is required to make a preliminary determination that the Government has established, by a preponderance of the evidence, the existence of a conspiracy and the defendant's participation in it. *Bourjaily v. United States*, —— U.S. ——, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987). In making this determination, we may examine the hearsay statements sought to be admitted. *Id.* at 2782. Even if those statements are made in the embryonic stages of the conspiracy, they are admissible against those who join the conspiracy later, so long as the statements are made during the course of and in furtherance of the conspiracy. *United States v. Potts*, 840 F.2d 368, 371 (7th Cir.1987).

■ An examination of the Government's written proffer reveals that it satisfies all of the essential elements. According to the Government's written proffer, the existence of the conspiracy and the defendant's participation in it will be established not only by the hearsay conversation between Kratochvil and the undercover FBI agent, but also by additional, independent evidence. This corroborating evidence includes testimony of FBI Special Agent

William Lueckenhoff as to the events in question, physical evidence such as the defendant's van and keys (which were ultimately delivered to the agent), and documentary evidence such as police reports indicating that the defendant reported the van stolen, as Kratochvil predicted he would. As the Government has indicated, the hearsay statements made by Kratochvil during these tape recorded conversations essentially set the conspiracy in motion or, at least, perpetuated its existence; therefore, these statements were made "during the course of" the conspiracy. Similarly, to the extent that Kratochvil's hearsay statements obviously facilitated the accomplishment of the insurance "give-up" scheme's objective, (*i.e.*, to make the van "disappear," under the guise of being stolen, and to make a fraudulent insurance claim), these statements were made "in furtherance of" the conspiracy.

Based on the Government's written proffer, this Court believes that the Government has established, by a preponderance of the evidence, that the co-conspirator statements at issue fall within the scope of Rule 801(d)(2)(E) of the Federal Rules of Evidence. Nevertheless, in this circuit, the trial judge retains the option of conditionally admitting the co-conspirator declaration evidence, subject to actual proof of these matters at trial. *See United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir.1978). This Court chooses to exercise that option. Accordingly, the Court conditionally admits the co-conspirator statements, subject to *actual* proof of these essential elements at trial. Since the Government has already made a written proffer as requested by the defendant, the defendant's motion to compel the Government to establish the admissibility of these statements prior to trial is denied as moot.

## CONCLUSION

For the reasons set forth above, the defendant's various pretrial motions are denied and the Government's co-conspirator declaration evidence is conditionally admitted under Rule 801(d)(2)(E) of the Federal

Rules of Evidence, subject to actual proof of the conspiracy at trial.

IT IS SO ORDERED.