915 F.2d 1557
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Gustavo FORERO-PERDOMO, Defendant, Appellant.
 No. 90-1034.
 United States Court of Appeals, First Circuit.
 Sept. 24, 1990.
 
 Appeal from the United States District Court for the District of Massachusetts Robert E. Keeton, District Judge.
 Maurice R. Flynn, III, by appointment of the Court, for appellant.
 Paul V. Kelly, Assistant United States Attorney, with whom Wayne A. Budd, United States Attorney, was on brief, for appellee.
 D.Mass.
 AFFIRMED.
 Before BREYER, Chief Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.
 VAN GRAAFEILAND, Circuit Judge.
 
 
 1
 Gustavo Forero-Perdomo appeals from a judgment of the United States District Court for the District of Massachusetts which followed a jury trial before Judge Keeton. The judgment convicted Forero-Perdomo of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846, and aiding and abetting such distribution, 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. We affirm.
 
 
 2
 The evidence of Forero-Perdomo's guilt was substantial. On April 20, 1989 a confidential informant named James Daly agreed to purchase a kilogram of cocaine from appellant's son, German Forero-Diaz, who told Daly that his father, Forero-Perdomo, would make the delivery. Daly and Forero-Diaz then went to meet Forero-Perdomo, and arrangements were made for the delivery to take place that night in a nearby alley.
 
 
 3
 At the appointed time, Forero-Perdomo was in the alley with the cocaine. He delivered it to Daly and received in return a black bag containing a "flash roll" of $6,360.00. DEA agents then converged on the alley, recovered the money and arrested Forero-Perdomo. They also arrested Forero-Diaz who was just outside the alley apparently acting as a lookout. The package that Forero-Perdomo delivered to Daly was found to contain 1,005 grams of 80 percent pure cocaine. Because Daly, the confidential informant, was fitted with a body recording device, there can be little controversy concerning the above-described incidents. Forero-Perdomo's guilt was established beyond a reasonable doubt.
 
 
 4
 Forero-Perdomo argues, nonetheless, that an allegedly erroneous evidentiary ruling by the district court entitles him to a new trial. We disagree. Following Forero-Perdomo's arrest, he was taken to DEA headquarters in Boston and advised of his Miranda rights. During the questioning that followed, Forero-Perdomo offered a bizarre explanation of his drug-related actions, saying that a man whom he did not know had approached him and offered to pay him $2,000 if he "would hold some money" for the man. On the trial, Forero-Perdomo altered this unbelievable story by testifying that on the night of April 20, 1989 he was meeting Daly, a longtime acquaintance, for the purpose of purchasing a sound amplifier from Daly and that Daly thrust the black bag containing the flash roll upon him even though he did not want to take it. However, the undisputed facts are that only two things changed hands that night--the drugs and the money. There was no amplifier. Proof of Forero-Perdomo's bizarre account to the DEA agents was admissible as bearing upon his credibility, and Forero-Perdomo does not contend otherwise.
 
 
 5
 Forero-Perdomo also told the DEA agents that he "had never done anything illegal", and he reiterated this assertion on the trial. The truth of the matter is that Forero-Perdomo had been convicted on February 2, 1985 on two counts of aiding and abetting the smuggling of aliens into the United States, and the district court permitted the Government to bring out on cross-examination the fact that Forero-Perdomo had lied to the DEA agents about these convictions. Defense counsel's sole objection to this inquiry was that its probative value would be substantially outweighed by the danger of unfair prejudice. Forero-Perdomo now argues for the first time that the smuggling offenses were neither felonies nor crimes of dishonesty so as to be admissible under Fed.R.Evid. 609. Since this objection was not made at trial, we do not know whether the manner in which the smuggling was accomplished "involved dishonesty or false statement" within the meaning of Rule 609(a). Under the circumstances, we weigh this argument under the doctrine of plain error. See United States v. Rosa, 705 F.2d 1375, 1380 (1st Cir.1983). There was no plain error here. Indeed there was no error at all.
 
 
 6
 The dishonesty at issue was not limited to the commission of the smuggling offenses; it included Forero-Perdomo's statement to the DEA agents that he never had done anything illegal. Fed.R.Evid. 608(b) provides that specific instances of a [defendant] witness's conduct may be inquired into on cross-examination if probative of untruthfulness. This Rule has been cited on numerous occasions to support the admission of untruthful statements made to law enforcement officials. Forero-Perdomo put his credibility at issue when he took the stand, and the Government was entitled to inquire on cross-examination concerning prior instances of conduct probative on the issue of his veracity. See United States v. Covelli, 738 F.2d 847, 856 (7th Cir.), cert. denied, 469 U.S. 867 (1984); United States v. Reid, 634 F.2d 469, 473-74 (9th Cir.1980), cert. denied, 454 U.S. 829 (1981). Evidence thus uncovered of false statements to investigating police officers bears clearly on the issue of whether the defendant is a believable witness. See United States v. McLaughlin, 777 F.2d 388, 392 (8th Cir.1985); United States v. Morgan, 476 F.2d 928, 930 (D.C.Cir.1973). Indeed, if such misstatements do not fall within the so-called "exculpatory no" exceptions, they may constitute criminal offenses in and of themselves under 18 U.S.C. Sec. 1001. See United States v. Rodgers, 466 U.S. 475, 481-82 (1984); United States v. Capo, 791 F.2d 1054, 1068-69 (2d Cir.1986), vacated en banc on other grounds, 817 F.2d 947 (1987); United States v. Lambert, 501 F.2d 943, 946 (5th Cir.1974) (en banc). However, we do not consider whether Forero-Perdomo was guilty of a section 1001 offense. It was within the district court's discretion to permit the Government to inquire on Forero-Perdomo's cross-examination into specific instances of conduct probative on the issue of credibility, even though the conduct did not result in a criminal conviction. See United States v. Barrett, 766 F.2d 609, 615 (1st Cir.), cert. denied, 474 U.S. 923 (1985). There was no abuse of such discretion here. Assuming for the sake of argument only that there was such abuse, in view of the overwhelming evidence of Forero-Perdomo's guilt, the error was harmless. See United States v. Mazza, 792 F.2d 1210, 1222 (1st Cir.1986), cert. denied, 479 U.S. 1086 (1987). The judgment of conviction is
 
 
 7
 Affirmed.
 
 
 
 *
 Of the Second Circuit, sitting by designation