**UNITED STATES of America**

v.

**Charles ZANFORDINO, Gloria Deans, and Efraim Harvey, Defendants.**

No. 93 Cr 365 (VLB).

United States District Court, S.D. New York.

Oct. 18, 1993.

Bruce G. Ohr, Asst. U.S. Atty., U.S. Attorney's Office, S.D.N.Y., for the U.S.

Theodore S. Green, Green & Willstatter, White Plains, NY, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

Three defendants are charged in this case with involvement in an armed robbery of the Eastchester Savings Bank in Pelham, New York.[1]

Defendant Charles Zanfordino ("movant") seeks (1) suppression of sneakers taken from him while in custody and laboratory reports linking those sneakers to the robbery; (2) severance of the trial from that of defendant Gloria Deans because the prosecution expects to offer a statement by her that she was a girlfriend of movant and had no knowledge of the robbery; (3) disclosure of laboratory notes and similar material relating to examination of the sneaker prints, and (4) disclosure of local police reports.

For reasons set forth below, defendant Zanfordino's motions are disposed of as follows:

(1) I deny the motion to suppress.

(2) I deny the motion for severance as premature inasmuch as it is possible that the statement cited may not be offered; if offered it is possible that it may not be admit-

ted; and if admitted it may not turn out not to be prejudicial to the movant.

(3) I grant the motion for discovery of material related to the laboratory identification of movant's sneakers to the extent that all material generated or utilized by experts who are expected to testify or by persons reporting to them is to be produced prior to trial for inspection by defense counsel.

(4) I grant the motion for disclosure of local police reports relating to movant made during the period September through December 1991 on the bases set forth in this paragraph. Defense counsel may submit a proposed a subpoena for such records under Fed.R.Cr.P. 17. The proposed subpoena must be furnished to the United States Attorney and filed for my consideration within 10 days of the date of this memorandum order to avoid unnecessary delay. It must specify that local authorities may furnish the subpoenaed materials directly to me for initial *in camera* inspection if it is believed that disclosure to defense counsel might be prejudicial to ongoing investigations. See *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

### II

■ Pursuant to a search warrant issued by a state judge on September 13, 1991, police seized two black Reebok sneakers in the possession of the movant. In the affidavit seeking the warrant, detective Joseph Kaminski, Pelham Police Department, stated that he had interviewed a witness who observed the movant, wearing black Reebok sneakers, jump onto a counter in the Eastchester Savings Bank on September 5, 1991 during a robbery of that bank. Kaminski further stated that he observed sneaker prints with the word "Reebok" on the bank counter, and that he had observed the movant wearing black Reebok sneakers while in custody. Under the Fourth Amendment, the requirement that a neutral magistrate determine whether to issue a warrant is an important safeguard against unreasonable searches and seizures. Where that precaution is observed, substantial weight must be given to

---

1. Defendant Gloria Deans has moved to suppress certain statements, which was denied after a hearing and which is not discussed in this memorandum order.

the commonsense judgment exercised by the judicial officer. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964); *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983); *United States v. Zucco,* 694 F.2d 44, 46 (2d Cir.1982).[2]

■ While the point is not necessary to my decision, I note that while movant argues that the seizure was not incident to an arrest, any expectation of privacy with respect to footwear worn when one enters custody is obviously attenuated; personal effects are often sequestered and consequently observed. See generally *United States v. Stevenson,* 803 F.Supp. 825 (S.D.N.Y.1992) and cases cited.

■ Movant's original papers proceeded on the assumption that there was no search warrant; his reply papers concede that the officers seizing the sneakers told movant that they would leave the warrant with the jail officials.[3]

Movant claims that the warrant was not displayed, and that no inventory or return was filed, but he cites no authority for the proposition that such irregularities, if they occurred, would justify suppression of otherwise admissible evidence in a criminal case.

Movant sets forth the timing of various events involving the warrant as he recalls it and suggests that that timing was suspicious. Movant's credibility was sufficiently put into question by his failure to mention the warrant in his moving papers that I give no credit to his allegations as to timing.

### III

■ The movant seeks a severance because the prosecution may offer a tape of a conversation indicating that another defendant was a girl friend of the movant, and that the girl friend knew nothing about the robbery.

The statement concerning lack of knowledge of the robbery would potentially justify an adverse inference with respect to the person making the statement if, but only if, evidence had been admitted tending to establish knowledge of the robbery on the part of the person making the statement. See generally *United States v. Montalvo,* 271 F.2d 922, 927 (2d Cir.1959); *United States v. Perkins,* 937 F.2d 1397, 1401–02 & ns 2–4 (9th Cir.1991). But if the statement involved is proven false,[4] knowledge of the robbery on the part of the person making the statement will already have been established. This makes any adverse inference from the false exculpatory statement unnecessary, confusing and of no additional probative value. Such circular reasoning would add nothing to proof of disputed events. Its predicate would be the very conclusion it would be intended to prove. Because of its dubious probative value, this negative assertion may be entirely irrelevant under Fed.R.Evid. 401–402, confusing surplusage inadmissible under Fed.R.Evid. 403, or harmless background. See *United States v. Brown,* 923 F.2d 109, 111 (8th Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 110, 116 L.Ed.2d 80 (1991). Similarly, that the co-defendant was the movant's girl friend may or may not be estab-

**2.** This is not a case in which arguably overzealous personnel acted independently, disregarding ability to obtain a warrant. See *Suss v. ASPCA,* 823 F.Supp. 181 (S.D.N.Y.1993).

**3.** Movant cites 18 U.S.C. § 3109, *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) and *United States v. Mapp,* 476 F.2d 67, 74–75 (2d Cir.1973), requiring law enforcement officers to state their authority and purpose in advance before breaking into a house to execute a warrant. It is obvious that these authorities do not avail movant.

**4.** Some courts permit statements to investigating agents amounting to an "exculpatory no" to be treated as false statements within the jurisdiction of a governmental agency justifying prosecutions under 18 U.S.C. § 1001. Such ·prosecutions, where the defendant makes no affirmative voluntary false assertions, blur the distinction between statements under oath or penalty of perjury and those not so made.

Arguably the result of permitting prosecutions predicated upon such "exculpatory no's" may be to discourage suspects from speaking with agents since they may be faced with the equivalent of perjury prosecutions for denying wrongdoing. See generally *United States v. Rodgers,* 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984); *United States v. Cogdell,* 844 F.2d 179, 183–85 (4th Cir.1988); *United States v. Steele,* 933 F.2d 1313, 1319–21 (6th Cir.1991).

lished by other evidence and may or may not be controverted or significant.

It cannot be predicted at this time that the co-defendant's statement a) will be offered, b) will be admitted as evidence, and c) will be prejudicial to the movant. The prosecution proceeds at its peril if it expects all three of these factors to become operational. Should I find at trial that the statement if admitted would be prejudicial to the movant, the prosecution can expect me to exclude the evidence at that time.

## IV

Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure requires that the prosecution permit defendants to inspect "papers, documents ... or copies thereof ... within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense ..."

The Advisory Committee Notes to the 1966 amendment to Rule 16 referring to the former subdivision (b)(1) which is the counterpart of the current (a)(1)(C) states that "specific designation is not required of the defendant [but] the burden is placed on [the defense] to make a showing of materiality to the preparation of [the] defense and that [the] request is reasonable. The requirement of reasonableness will permit the court to define and limit the scope of the government's obligation to search its files while meeting the legitimate needs of the defendant."

This statement emphasizes the broad scope of discovery, while limiting the burden on the prosecution to "search its files" where this might be an open-ended task with no workable outside definition of where it would be reasonable to stop.

■ A narrow view of Rule 16(a)(1)(C) is inappropriate; failure to provide reasonably available material that might be helpful to the defense and which does not pose any risks to witnesses or to ongoing investigation is contrary to requirements of due process and to the purposes of the Confrontation Clause. If an expert is testifying based in part on undisclosed sources of information,

cross-examination vouchsafed by that Clause would be unduly restricted.

*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967) is focused upon evidence which is exculpatory and which may alter the result; such evidence must be provided to the defense even without request. Appellate consideration of the adequacy of discovery to the defense in criminal cases is almost always presented in the context of defense efforts to reverse or vacate conviction after trial. This is the necessary result of the inability of the prosecution to appeal from an acquittal, whereas defendants may appeal from convictions and allege shortfalls in discovery as part of their appeals. In considering such appeals, courts are properly reluctant to overturn basically fair trials because of absence of complete discovery where the shortfalls may have been harmless error. See generally *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Yates v. Evatt,* —— U.S. ——, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Similarly, district courts when granting discovery rarely find it necessary to explain their rulings, which are not subject to review except through rarely-sought petitions for mandamus. Consequently, the full desirability of extending liberal discovery to defendants where the prosecution is not prejudiced, while reflected in day-to-day practice, is rarely emphasized in published rulings.

■ Materials relevant to opposing expert testimony involving analysis of evidence fall clearly and squarely within Fed.R.Cr.P. 16(a)(1)(C) if readily available. Worksheets and other data developed by or used by experts do not constitute opinions of prosecutors or agents concerning investigative leads exempt from pretrial disclosure under Fed. R.Cr.P. 16(a)(2). They are, instead, covered by 18 U.S.C. § 3500 once the witness testifies.

■ The United States Attorney's objection to furnishing all materials created or utilized by the FBI experts who reported on or may testify concerning the identification of the movant's Reeboks also ignores Fed. R.Evid. 705, which indicates that experts may be required to disclose "underlying facts or data" on cross-examination; delaying disclosure until that time would merely prolong the trial.

Inability of a defendant to learn before trial the full basis for an adverse expert opinion would run counter to Fed.R.Cr.P. 2 which provides that the Criminal Rules "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

Fed.R.Civ.P. 26(b)(4), while not directly controlling, is persuasive. It permits the adversary of the party offering the expert witness to obtain information to be relied upon by the expert. Under that Rule, courts have recognized the "importance of ensuring that adequate discovery of experts takes place prior to the start of trial," *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 48 n. 3 (2d Cir.1984); see also *Murray International v. New York Telephone Co.*, 1993 WL 82531, 1993 U.S. Dist. LEXIS 4921 (S.D.N.Y.1993); Committee on Product Liability, "Discovery of Expert Witnesses Under Federal Rule 26," 44 Record of The Ass'n of the Bar of the City of N.Y. No. 5 at 423 (June 1989).[5]

The United States Attorney has suggested no governmental privilege, or any harm to ongoing investigations, which would militate against the disclosure of material prepared or utilized in connection with analysis of the footprints and sneakers involved in this case. See *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *In re United States*, 565 F.2d 19 (2d Cir.1977), *cert. denied* 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979); see also *United States v. Fernandez*, 506 F.2d 1200 (2d Cir.1974).

As stated in *United States v. Kattar*, 840 F.2d 118, 127 (1st Cir.1988), a "criminal trial should be viewed not as an adversarial sporting contest, but as a quest for truth." Thus the investigative machinery of the government should be available to seek the truth, not merely to convict, inasmuch as an erroneous conviction would not serve the purposes of law enforcement. This should ordinarily be done voluntarily without the need for motion practice unless some harm to the government would be caused by the disclosure—and none has been suggested here. The result of full disclosure of information which may be relevant, where the disclosure offends no privilege, is more reliable factfinding, which benefits the prosecution and the public as well as the defense. See generally J. & B. Frank, *Courts on Trial* (1963); Cahn, "Fact Skepticism: An Unexpected Chapter," 38 NYU L.Rev. 1025 (1963).

SO ORDERED.

5. Because of the importance of cross-examination of experts (see Fed.R.Evid. 705), where material sufficiently relevant to the issues is shown to an expert who will testify, it may be discoverable even if otherwise subject to a privilege such as that accorded to work product under Fed.

R.Civ.P. 26(b)(3), *Occulto v. Adamar, Inc.*, 125 F.R.D. 611 (D.N.J.1989); such production is not automatic where other considerations are paramount, *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587 (3d Cir.1984).