**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronnie B. EDMONDS, Defendant–
Appellant.**

**No. 95–50381.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1996.

Decided Dec. 20, 1996.

Peter M. Ferguson, San Francisco, CA, for defendant-appellant.

Mervyn Hamburg, United States Department of Justice, Washington, DC, for plaintiff-appellee.

Before: HUG, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.

PREGERSON, Circuit Judge:

Ronnie B. Edmonds appeals his jury conviction for making seventeen false statements to law enforcement officers in violation of 18 U.S.C. § 1001. Edmonds also appeals his sentence of 41 months imprisonment, followed by three years supervised release. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I.  BACKGROUND

Appellant Ronnie B. Edmonds ("Edmonds") worked as an informant for Operation Alliance, a multi-agency task force created to combat illegal drug trafficking.[1] In the spring of 1992, Edmonds reported to Detective Richard Kennedy of the Sheriff's Department of Hillsborough County, Florida, that a large amount of cocaine was being moved from California to Florida by "Jose Gonzalez." Detective Kennedy contacted the Customs Service, which then relayed the information about Jose Gonzalez to Operation Alliance.

As an informant for Operation Alliance, Edmonds reported on numerous occasions that specific businesses and persons were being used by "Jose Gonzalez" to transport and store drugs. Edmonds also provided information about the time and place of drug trafficking transactions. Edmonds signed statements describing his contacts, various meetings, and the information he had obtained. Operation Alliance agents never substantiated all of Edmonds' information, nor did they witness any reported transactions.

On August 24, 1992, Edmonds informed Alliance agents that drug transactions would take place in two homes. One of the homes belonged to Donald Carlson. On the night of August 25, agents forcibly entered the Carlson residence. Uncertain of the agents' identity, Carlson opened fire. The agents returned fire, wounding Carlson. A search of the residence failed to uncover any drugs.

The shooting at the Carlson residence prompted an internal investigation which found that the Jose Gonzalez drug trafficking organization did not exist. In September 1992, the government sought a grand jury indictment against Edmonds for making false statements in violation of 18 U.S.C. § 1001. Edmonds was indicted in January 1993. A jury convicted Edmonds of seventeen counts of violating § 1001, and the district court sentenced him to 41 months in prison.

Edmonds now appeals his conviction and sentence. He claims that a reversal of his conviction is warranted because of (1) insufficient evidence, (2) outrageous government conduct, and (3) vindictive prosecution. Edmonds also claims that in applying the Sentencing Guidelines, the sentencing judge improperly grouped the seventeen counts.

## II.  SUFFICIENCY OF EVIDENCE UNDER 18 U.S.C. § 1001

There is sufficient evidence to support a conviction if, after reviewing the evi-

---

1.  The task force included agents from the Drug Enforcement Administration ("DEA"), U.S. Customs, Border Patrol, and the San Diego Police Department.

dence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Jones,* 84 F.3d 1206, 1210 (9th Cir.1996).

■ Edmonds contends that the evidence was insufficient to support a conviction under 18 U.S.C. § 1001. Section 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1001.

Edmonds argues that § 1001 does not support a conviction in his case because the government failed to prove that his work as an Operation Alliance informant constituted a "matter within the jurisdiction of any department or agency of the United States." According to Edmonds, the DEA failed in his case to comply with its internal requirement that agents obtain authorization to use an informant with prior felony convictions. Edmonds claims that this noncompliance shows that the DEA exceeded its authority and was therefore operating beyond its jurisdiction.

■ Edmonds' argument is without merit. In *United States v. Rodgers,* the Supreme Court stated that "the term 'jurisdiction' should not be given a narrow or technical meaning for the purposes of § 1001." 466 U.S. 475, 480, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984). Moreover, as this court stated in *United States v. Bedore:* "Typical of the kinds of statements that are within the purview of section 1001 are false reports of crime made to federal law enforcement agencies that may engender groundless federal investigations." 455 F.2d 1109, 1111 (9th Cir.1972) (false name given to FBI agent

trying to serve subpoena not a false statement within meaning of § 1001).

Interpreting § 1001's jurisdictional requirement in light of *Rodgers* and *Bedore,* we find that even if the DEA failed to comply with the letter of its internal procedures in Edmonds' case, this shortcoming would not alter the fact that Edmonds' false reports led to groundless federal investigations and would therefore fall within the purview of § 1001. Accordingly, we find that there is sufficient evidence to support Edmonds' conviction.

## III. OUTRAGEOUS GOVERNMENT CONDUCT

■ We review *de novo* the district court's denial of Edmonds' motion to dismiss his indictment on the grounds of outrageous government conduct. *United States v. Dudden,* 65 F.3d 1461, 1466 (9th Cir.1995).

■ To support a dismissal of Edmonds' indictment on the grounds of outrageous government conduct, Edmonds must prove that the government's conduct was "so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process." *United States v. Garza–Juarez,* 992 F.2d 896, 904 (9th Cir.1993) (rejecting outrageous conduct defense of individuals convicted for illegal gun sales even though government had initiated all contacts, raised subject of illegal firearms, and offered to supply materials).

Edmonds claims that the government's application for the Carlson search warrant was flawed so as to rise to the level of outrageous conduct. According to Edmonds, DEA agents applied for the search warrant on the basis of signed affidavits stating that Edmonds' information was reliable when they actually suspected that the information was false.

Even if this court were to find Edmonds' allegations credible, his claim is without merit. Edmonds did not establish a link between the improperly executed search warrant and the deprivation of his own due process rights. The rights affected by the search of Carlson's home were not those of Edmonds, but those of Carlson himself. Nor do Edmonds' allegations point to flagrantly offensive gov-

ernment conduct required to satisfy the "extremely high standard" described in *Garza–Juarez*, 992 F.2d at 904 (quoting *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991)). Accordingly, the district court did not err in denying Edmonds' motion to dismiss on the basis of outrageous government conduct.

## IV. VINDICTIVE PROSECUTION

■ To establish a prima facie case of vindictive prosecution, Edmonds "must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such." *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir.1995) (quoting *United States v. Sinigaglio*, 942 F.2d 581, 584 (9th Cir.1991)). Upon such a showing, the prosecution has the burden of proving that "independent reasons or intervening circumstances dispel the appearance of vindictiveness and justify its [prosecutorial] decisions." *Montoya*, 45 F.3d at 1299 (quoting *United States v. Hooton*, 662 F.2d 628, 634 (9th Cir.1981), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982)).

■ Edmonds claims that the prosecution against him was initiated in retaliation for the civil suit Carlson filed against the government in June 1993. Carlson's suit alleged that the government acted recklessly in executing the search warrant at the Carlson residence. Edmonds suggests that he was indicted to shift the blame to him.

We conclude that the facts of this case cannot support a showing of vindictive prosecution. Where a defendant claims that the filing of an initial indictment constituted vindictive prosecution, "the defendant must show vindictiveness on the part of those who made the charging decision." *United States v. McWilliams*, 730 F.2d 1218, 1221 (9th Cir.1984) (citing *Hooton*, 662 F.2d at 634). Edmonds has made no showing of *actual* vindictiveness on the part of any federal official. Nor can Edmonds show facts suggesting the *appearance* of vindictive prosecution in retaliation for Carlson's civil suit given that Edmonds was indicted *before* Carlson's suit was filed. Accordingly, the district court did not err in concluding that Edmonds had failed to make a showing of vindictive prosecution.

## V. GROUPING OF COUNTS UNDER SENTENCING GUIDELINE § 3D1.2(b)

■ We accord due deference to the district court's application of the Sentencing Guidelines to the facts; we review findings of fact for clear error. 18 U.S.C. § 3742(e).

■ Edmonds contends that the seventeen counts of his conviction should have been aggregated for sentencing purposes into one group instead of six groups. Section 3D1.2(b) of the Sentencing Guidelines provides that counts involving "substantially the same harm" shall be grouped into a single group "[w]hen counts involve the *same victim* and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." United States Sentencing Guideline § 3D1.2(b) (emphasis added).

Edmonds' actions fail to meet the § 3D1.2(b) standard for a single grouping. While Edmonds claims that the government was the sole victim of his false statements, the evidence shows that more than one victim suffered because of Edmonds' mischief. The district court did not err in finding that Edmonds made false statements about a number of individuals and businesses to multiple law enforcement officials and agencies.

The district court decided to group Edmonds' seventeen counts of conviction into six groups after analyzing Edmonds' offenses under several categories: the number of persons accused of drug involvement, the number of reported drug transactions, the number of locations where investigations were carried out, and the number of individuals and agencies lied to. Six was the lowest number of groups under these categories. According due deference to the district court's application of the Sentencing Guidelines to the facts, we affirm the court's finding of six groups.

## VI. CONCLUSION

For the reasons stated above, we uphold Edmonds' conviction of seventeen counts of

making false statements in violation of § 1001, and we uphold the sentence imposed.

AFFIRMED.