**UNITED STATES of America, Appellant,**

v.

**Alphonso Michael ESPY, Appellee.**

**No. 98–3001.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 25, 1998.

Decided June 16, 1998.

Charles M. Kagay, Chief Appellate Counsel, argued the cause for appellant, with whom Donald C. Smaltz, Independent Counsel, Theodore S. Greenberg, Deputy Independent Counsel, and Joseph P. Guichet, Associate Independent Counsel, were on the briefs.

Charles J. Ogletree, Jr. argued the cause for appellee, with whom Reid H. Weingarten,

Erik L. Kitchen, and Theodore V. Wells, Jr. were on the brief. Rhonda M. Rivens entered an appearance.

Before: SILBERMAN and WILLIAMS, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SILBERMAN.

Concurring opinion filed by Senior Circuit Judge BUCKLEY.

SILBERMAN, Circuit Judge:

This case arises from an independent counsel investigation into charges that former Secretary of Agriculture Alphonso Michael Espy accepted illegal gratuities while in office, used public funds for his personal benefit, and lied to cover up his wrongdoing. A grand jury returned a 39–count indictment, but the district court granted Espy's motions to dismiss Counts 26–28, brought under the Meat Inspection Act, and Count 39, brought under the False Statement Statute. The government immediately appealed. We affirm the district court with respect to Count 39, but reverse with respect to Counts 26–28.

## I.

 Counts 26–28 alleged that Espy accepted approximately $4,221.00 in gifts from Tyson's Foods and Quaker Oats, corporations subject to the Meat Inspection Act. The Act forbids "any inspector, deputy inspector, chief inspector, or *other officer or employee of the United States authorized to perform any of the duties prescribed by this subchapter*" to accept gratuities. 21 U.S.C. § 622 (1994) (emphasis added). The district court, agreeing with appellee, concluded that the statute is ambiguous as to whether it includes the Secretary of Agriculture and, relying on several canons of construction, determined that the Secretary was not covered.[1] Before us, appellee particularly emphasizes *ejusdem generis* and the avoidance of constitutional questions. Where a general term

---

1. At oral argument, counsel for appellee emphasized several times that he had prevailed before the district court. That point could be relevant only as an argument for deference, but the issues before us are questions of statutory interpretation. Obviously, no deference is appropriate.

follows a list of specific terms, the rule of *ejusdem generis* limits the general term as referring only to items of the same category. Accordingly, both appellee and the district court have interpreted "other officer" to mean only those who actually inspect meat. As for the avoidance canon, *see Association of American Physicians and Surgeons v. Clinton*, 997 F.2d 898, 906–11 (D.C.Cir.1993), § 622 provides that a person convicted under that section will be "summarily discharged from office and shall be punished by a fine not less than $1,000 nor more than $10,000 and by imprisonment [for] not less than one year nor more than three years." Although Espy is not subject to removal because he is no longer Secretary of Agriculture, he somewhat imaginatively argues that if he were still Secretary, the removal provision could not be applied constitutionally to him. Congress would not have intended an unconstitutional result, therefore he claims that the Secretary must not be among the "other officers" to whom the statute refers.

But before either *ejusdem generis* or the avoidance canon applies, there must be ambiguity in the statute—and we see none. The Secretary is certainly an "other officer authorized to perform ... duties prescribed by this subchapter." To name a few: "the Secretary shall cause to be made by inspectors appointed for that purpose a postmortem examination and inspection of the carcasses and parts thereof of all cattle" 21 U.S.C. § 604 (1994); "the Secretary shall cause to be made a careful inspection of all cattle ... intended and offered for export to foreign countries" 21 U.S.C. § 612 (1994); "the Secretary shall submit to [designated congressional committees] a comprehensive and detailed written report" 21 U.S.C. § 620(e) (1994); and the "Secretary shall, from time to time, make such rules and regulations as are necessary for the efficient execution of the provisions of this subchapter" 21 U.S.C. § 621 (1994). The Act was passed in re-

sponse to Upton Sinclair's famous book THE JUNGLE, *see United States v. Seuss*, 474 F.2d 385, 388 (1st Cir.1973), and seeks to ensure safe meat products. Espy may well be correct in saying that the paradigm in Congress' mind was a corrupt meat inspector engaged in the actual examination of slaughterhouses; but a corrupt Secretary, who supervises all Agriculture Department employees, obviously could cause an even greater deleterious effect on meat. *See Brogan v. United States* —— U.S. ——, ——, 118 S.Ct. 805, 809, 139 L.Ed.2d 830 (1998) ("[I]t is not, and cannot be, our practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy."). Nor are we impressed by appellee's observation that the Secretary's duties under the subchapter are not specifically referred to as "duties," in contrast to the meat inspector's tasks, which are identified in § 621 as inspecting carcasses and "other duties." We think that distinction trivial. All of appellee's attempts to restrict the word "duty" to hands-on "meat inspection" are really quite labored. The Act charges the Secretary with a host of tasks that fit comfortably within the definition of "duty," which is "something that one is expected or required to do by moral or legal obligation." THE RANDOM HOUSE COLLEGE DICTIONARY 411 (Revised Ed.1980). Although the Act never explicitly identifies these responsibilities as "duties," it gives no indication that the normal meaning of duty should not apply.[2]

■ Since we do not find the statute in the least bit ambiguous, we have no need to employ, nor any legitimate purpose in employing, canons of construction designed to reconcile confusing language. *Ejusdem generis* only comes into play when the general term in the list is so broad that it creates ambiguity. *Gooch v. United States*, 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522 (1936) *accord United States v. Mescall*, 215 U.S. 26,

---

**2.** Appellee also insists that because he, "like all other Cabinet members," is already covered by the general government bribery provision found at 18 U.S.C. § 201 (1994), it is doubtful that Congress intended to reach him through § 622. But it is neither here nor there that the general bribery statute covers the Secretary of Agriculture. Appellee does not dispute that the Meat

Inspection Act applies to meat inspectors, yet they are also covered by the general bribery statute—which, contrary to Espy's implication, regulates more than Cabinet officers. 18 U.S.C. § 201(a)(1) (defining the "public officials" within its ambit as any "officer or employee or person acting for or on behalf of the United States").

30 S.Ct. 19, 54 L.Ed. 77 (1909). For example, in *Cole v. Burns International Security Services,* 105 F.3d 1465 (D.C.Cir.1997), we applied the canon to a provision of the Federal Arbitration Act exempting "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (1994). There, the phrase "workers engaged in foreign or interstate commerce" was sweeping enough to include nearly every worker in the United States. Indeed, it was so broad that a literal interpretation would have rendered the preceding specific enumerations (seamen and railroad employees) mere surplusage. Here, by contrast, the general term "other officer or employee authorized to perform duties prescribed by this subchapter" has set its own limits—"duties prescribed by this subchapter"—so there is no need to limit it further.

For the same reason, we need not elaborate on appellee's constitutional argument. *See Almendarez–Torres v. United States,* ——U.S. ——, ——, 118 S.Ct. 1219, 1228, 140 L.Ed.2d 350 (1998) ("[for the avoidance canon to apply], the statute must be genuinely susceptible to two constructions . . . ."); *see also Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). It would not be uncalled for, however, to observe that we think his constitutional argument is considerably overdone.[3] This removal provision is not the same as the one held unconstitutional in *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). There, Congress itself maintained control over removal. Here, Congress only disqualified someone convicted under the Meat Inspection Act from continued service in his or her government job. Although there are constitutional limits to the qualifi-

cations Congress can impose on presidential appointees, we have little doubt that Congress could legitimately restrict Agriculture Department officers to those not convicted under the Meat Inspection Act. *See Myers v. United States,* 272 U.S. 52, 128, 47 S.Ct. 21, 71 L.Ed. 160 (1926) ("We see no conflict between the [power to prescribe qualifications for office or to give reasonable classification for promotion] and that of appointment and removal, provided of course that the qualifications do not so limit selection and so trench upon executive choice as to be in effect legislative designation."). And it is doubtful that a restriction on continued service is any more constitutionally suspect than an initial appointment restriction. *See Public Citizen v. Dep't of Justice,* 491 U.S. 440, 484–85, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring) (arguing that removal, an implicit power, warrants less protection than the appointment power, which is explicitly conferred by the Constitution).[4]

## II.

■ Count 39 of the Indictment alleges that when the President's Chief of Staff and Counsel questioned Espy about whether he had received gratuities, Espy responded "there's nothing else out there," although he knew that representation to be untrue. The False Statement Statute in effect at the time forbad false statements to be made "in any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1001 (1994).[5] The district court held that the Executive Office of the President was not a "department" and dismissed the count. The independent counsel, urging reversal, argues that the statute uses the word department to refer to the whole execu-

---

3. Moreover, we cannot imagine any sitting Secretary facing the provision in the way Espy envisions. He argues that, upon conviction, the statute would require a judge to order the President to fire the defendant. This is by no means clear from the statute. The more likely interpretation is that the summary discharge provision, as applied to any officer or employee, is merely a hortatory direction from Congress to the President.

4. Espy thinks it particularly significant that no Secretary of Agriculture has ever been prosecuted under the Meat Inspection Act. We are thoroughly unimpressed with this reasoning. The Chief Justice of the United States has never been prosecuted for grand theft larceny, but that does not mean that larceny laws do not apply to him.

5. Notably, § 1001 was amended in 1996 to cover any false statement made within the jurisdiction of the "executive, legislative, or judicial *branch* of the Government." (Emphasis added.)

tive branch (as in "executive department") or, alternatively, that the Executive Office of the President should be regarded as an agency.

In Title 18, the term "department" is defined as "one of the executive departments enumerated in section 1 of Title 5, *unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.*" 18 U.S.C. § 6 (1994) (emphasis added). The Supreme Court has observed that § 6 treats the expansive reading of "department" as the exception. *Hubbard v. United States*, 514 U.S. 695, 700–01, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995). In *Hubbard*, the Court held that the judicial branch is not a "department" under § 1001; in so doing, it overruled *United States v. Bramblett*, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), where, applying § 1001 to the legislative branch, the Court had broadly interpreted "department" to describe the "executive, legislative, and judicial branches of the Government." *Id.* at 509, 75 S.Ct. 504. Appellant would have us limit *Hubbard* to a holding that under § 1001, department may not refer to the "judicial department" but can refer to the "executive department." We do not think that reading of either *Hubbard* or the statute is feasible. Nothing in the grammatical context of § 1001 indicates that Congress was using the word "department" as a synonym for "branch."

Appellant's contention that the Executive Office of the President is an "agency" within the meaning of § 1001 is not so easily discarded. Section 6 provides that "[t]he term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that the term was intended to be used in a more limited sense." Although acknowledging that none of these terms is an obvious fit with the Executive Office of the President, the appellant argues that it can qualify as an "authority"; in any event, he says, the word "includes" renders the list illustrative rather than exhaustive, and the tone suggests an expansive interpretation. Espy, on the other hand, would have us look to the Freedom of Information Act (FOIA), which also uses the term "agency." An entity within the Executive Office does not qualify as an "agency" unless it exercises "substantial independent authority," *Soucie v. David,* 448 F.2d 1067, 1073–76 (D.C.Cir. 1971); *see Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 156, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), which, of course, would not be true of either the Chief of Staff or the President's Counsel. And it has never been thought that the whole Executive Office of the President could be considered a discrete agency under FOIA.

Espy's analogy to FOIA does not work. The Supreme Court defined "agency" narrowly under FOIA on the assumption that Congress would not have wished to chill discussion between close presidential advisors. It is by no means obvious that Congress, for analogous policy reasons, would have wished a similarly narrow definition of agency for purposes of § 1001. Indeed, the independent counsel argues that a broad definition would more likely serve the policy of this statute by protecting the Executive Office against false statements in the course of its investigations.

We think the key to deciding whether "agency" should be read as referring to the entire Executive Office of the President is the word "jurisdiction." Recall that § 1001 reaches matters "within the *jurisdiction* of any department or agency." (Emphasis added.) "Jurisdiction" implies a limited area of authority. The jurisdiction of the Environmental Protection Agency, for example, can be distinguished from the jurisdiction of the Securities and Exchange Commission. Each has a realm in which it acts. It would be anomalous, however, to refer to the "jurisdiction" of the Executive Office of the President—which, of course, is coextensive with the President's authority. We do not normally refer to the President's executive authority under the Constitution as his "jurisdiction" because—even for those with a relatively formalist view of separation of powers—the executive and legislative authority are not viewed as separate "jurisdictions."

■ The independent counsel relies on *United States v. Rodgers,* 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), where the Supreme Court, reversing the Court of Appeals, said that jurisdiction meant only "the power to act." There, however, the Court of Appeals had held § 1001 inapplicable to the FBI because it attributed a quasi-judicial meaning to the word "jurisdiction" and the FBI "had no power to adjudicate rights, establish binding regulations, compel the action or finally dispose of the problem giving rise to the inquiry." *Id.* at 478, 104 S.Ct. 1942 (quoting *Friedman v. United States,* 374 F.2d 363, 368 (1967)). Although rejecting the quasi-judicial definition, the Supreme Court's reasoning is consistent with the notion that jurisdiction implies limited authority. The Court said:

> The most natural, nontechnical reading of the statutory language is that it covers all matters confided to the authority of the agency or department. Thus, Webster's Third New International Dictionary broadly defines "jurisdiction" as, among other things, the "limits or territory within which any particular power may be exercised: sphere of authority." A department or agency has jurisdiction, in this sense, when it has the power to exercise authority in a particular situation. Understood in this way, the phrase "within the jurisdiction" merely differentiates the official, authorized functions of an agency from matters peripheral to the business of that body.

*Id.* at 479, 104 S.Ct. 1942 (citations omitted). The problem with appellant's interpretation is that nothing is peripheral to the business of the President, so the phrase "within the jurisdiction" does not draw any lines. One might say that the phrase differentiates between the President's personal business and that related to his office. But the line between "official" and "personal" distinguishes "governmental" from "private," while jurisdictional lines more aptly categorize things as within the province of one or another governmental body. Here, everything is within the province of the same governmental body. We therefore hold that even if the Executive Office of the President is an "agency" under § 6, it cannot be considered an "agency" for purposes of § 1001.

\* \* \*

Accordingly, we remand to the district court and order Counts 26–28 reinstated.

BUCKLEY, Senior Judge, concurring:

The word "unambiguous" has ambiguities of its own. Thus, unambiguous language chosen by Congress to address a particular situation will at times have consequences that could not have been intended by its draftsmen; and such unintended consequences may engender ambiguity where none at first appears. In this case, the court is correct in stating that the language of section 622 clearly applies to a Secretary of Agriculture by virtue of his being an "officer ... of the United States authorized to perform ... duties described by this subchapter." 21 U.S.C. § 622. Yet the section's summary dismissal sanction, as applied to a cabinet officer, would appear to exceed Congress's authority. It is in such circumstances that courts will invoke the doctrine of judicial severability. *See, e.g., Robert Dollar Co. v. Canadian Car & Foundry Co.,* 220 N.Y. 270, 115 N.E. 711, 713 (1917) (holding that "where a single section of a statute attempts or purports to cover two entirely distinct and separable classes of cases, one properly and the other improperly, ... [the section] may be upheld as to the class which constitutionally may be thus covered, even though condemned as to the other"). This is a judicial remedy with which the drafters of the 1907 Meat Inspection Act were familiar. Unlike many criminal cases in which courts have rejected application of the doctrine of severability, *cf. United States v. Raines,* 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ("Perhaps cases can be put where the application [of avoidance and severability doctrines] to a criminal statute would necessitate such a revision of its text as to create a situation in which the statute no longer gave an intelligible warning of the conduct it prohibited."), severance of the dismissal penalty would not undermine the integrity of the remainder of section 622 or "hamper the ability of '[e]very man ... to know with certainty when he is committing a crime.'"

*United States v. Reese,* 92 U.S. 214, 220, 23 L.Ed. 563 (1875) (citation omitted).

I agree with the court's rejection of Espy's argument that, because Congress had no power under the Constitution to order the dismissal of a cabinet officer, the phrase "other officer[s]" may not be construed to include the Secretary. Whatever ambiguity may be created by virtue of the section's inclusion of what may be an impermissible penalty as applied to a particular person is cured by the doctrine of severability, which would allow a court to withhold the dismissal sanction while enabling it to apply the remaining ones to a Secretary convicted of violating the section.

Because I believe this to be the proper basis for disposing of Espy's avoidance argument, I disassociate myself from the court's dicta, on page 1372, concerning Congress's putative authority to legislate conditions for a cabinet officer's continuance in service and its suggestion, in footnote 3, that the summary dismissal provision might be construed as merely hortatory.