# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 15, 2007         Decided July 22, 2008

No. 06-5304

PUBLIC CITIZEN, INC.,
APPELLEE

v.

RUBBER MANUFACTURERS ASSOCIATION,
APPELLANT

MARY E. PETERS, SECRETARY, U.S. DEPARTMENT OF
TRANSPORTATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00463)

*Eugene Scalia* argued the cause for the appellant. With him
on the briefs was *Laurie T. Baulig*.

*Scott L. Nelson* argued the cause for appellee Public Citizen,
Inc. With him on the brief was *David Arkush*.

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause
for the federal appellee. With her on the brief were *Jeffrey A.
Taylor*, U.S. Attorney, *R. Craig Lawrence*, Assistant U.S.

Attorney, and *Lloyd S. Guerci*, Assistant Chief Counsel, National Highway Traffic Safety Administration.

Before: RANDOLPH and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  A provision of the Transportation Recall Enhancement, Accountability, and Documentation (TREAD) Act limits the disclosure, "pursuant to section 30167(b)" of the National Traffic and Motor Vehicle Safety Act, of certain early warning reporting data.  Appellant Rubber Manufacturers Association contends that the limits imposed by the TREAD Act apply not only to disclosures made "pursuant to section 30167(b)," but also to disclosures made in response to requests under the Freedom of Information Act.  The Secretary of Transportation, appellee Public Citizen, Inc., and the district court all disagree with the Rubber Manufacturers Association.  We do as well.  Concluding that the plain language of the TREAD Act means what it says, we affirm the judgment of the district court.

I

The National Traffic and Motor Vehicle Safety Act of 1966 (the Safety Act) requires manufacturers of motor vehicles and motor vehicle equipment to submit certain information to the National Highway Traffic Safety Administration (NHTSA) in order "to reduce traffic accidents and deaths and injuries resulting from traffic accidents."  49 U.S.C. § 30101.  In November 2000, Congress enacted the TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000), which amended the Safety Act and directed the Secretary of Transportation to promulgate a regulation expanding the scope of the information that

manufacturers are required to submit to NHTSA. This additional information, which the statute refers to as "early warning reporting" (EWR) data, is information that may assist the agency in identifying safety defects in motor vehicles or motor vehicle equipment. *See* 49 U.S.C. § 30166(m)(3)(B). NHTSA published the regulation called for by the TREAD Act on July 10, 2002. Reporting of Information and Documents About Potential Defects, 67 Fed. Reg. 45,822-01 (July 10, 2002) (relevant provisions codified at 49 C.F.R. §§ 579.5, 579.21-.26). For tire manufacturers, the rule requires the reporting of, inter alia, information regarding property damage claims, warranty adjustments, and claims that a defect in the manufacturer's tires caused injury or death. 49 C.F.R. § 579.26.

In addition to increasing the flow of industry information to the agency, the TREAD Act contains a provision regarding disclosure of EWR data. Section 30166(m)(4)(C), which is entitled "Disclosure," provides that "[n]one of the information collected pursuant to the final [EWR rule] shall be disclosed *pursuant to section 30167(b)* unless the Secretary determines" that disclosure will assist in carrying out specified provisions of the Safety Act. 49 U.S.C. § 30166(m)(4)(C) (emphasis added). Section 30167(b), referenced in the quoted provision, is a section of the Safety Act that requires the Secretary to "disclose information obtained under this chapter related to a defect or noncompliance that the Secretary decides will assist in carrying out" the same provisions of the Safety Act specified in § 30166(m)(4)(c). Section 30167(b) expressly states that its disclosure requirements are "in addition to the requirements of section 552 of title 5," which is the Freedom of Information Act (FOIA). 49 U.S.C. § 30167(b).

In April 2002, NHTSA initiated a rulemaking to address the treatment of EWR data under the agency's Confidential Business Information (CBI) Rule, 49 C.F.R. pt. 512.

Confidential Business Information, 67 Fed. Reg. 21,198 (Apr. 30, 2002). That rule sets forth the procedures and standards by which NHTSA considers claims that information submitted to the agency is entitled to confidential treatment under FOIA. *See* 49 C.F.R. § 512.1.

On July 28, 2003, NHTSA issued a Final CBI Rule, which accepted the position of the Rubber Manufacturers Association (RMA) that certain categories of EWR data, the disclosure of which would cause substantial competitive harm, are protected from public disclosure under FOIA Exemption 4. *See* Confidential Business Information, 68 Fed. Reg. 44,209, 44,211 (July 28, 2003) (Final CBI Rule).[1] Exemption 4 provides that FOIA's disclosure requirements do not apply to matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).

The Final CBI Rule rejected, however, RMA's suggestion that § 30166(m)(4)(C) is a withholding statute that renders *all* EWR data protected from disclosure under FOIA Exemption 3 "unless the Secretary determines the disclosure of such information will assist in carrying out" the specified provisions of the Safety Act. Final CBI Rule, 68 Fed. Reg. at 44,217-18 (quoting 49 U.S.C. § 30166(m)(4)(C)). Exemption 3 provides that FOIA's disclosure requirements do not apply to matters that are "specifically exempted from disclosure by statute[,] . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for

---

[1]The protected categories include most information about production numbers, warranty claims, field reports, and consumer complaints. *See* Final CBI Rule, 68 Fed. Reg. at 44,221-25.

withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

Public Citizen and RMA each petitioned for reconsideration. The former challenged the agency's conclusion that entire categories of EWR data are protected from disclosure under Exemption 4; the latter challenged the decision not to treat all EWR data as protected from disclosure pursuant to Exemption 3. On April 21, 2004, NHTSA denied both petitions. *See* Confidential Business Information, 69 Fed. Reg. 21,409-01, 21,410-11, 21,419-23 (Apr. 21, 2004).

Public Citizen then filed suit in district court alleging that NHTSA's promulgation of the Final CBI Rule violated the notice-and-comment requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553, and challenging the agency's decision that FOIA Exemption 4 applies to entire categories of EWR data. *See Public Citizen, Inc. v. Mineta*, 427 F. Supp. 2d 7 (D.D.C. 2006). RMA intervened to defend the Exemption 4 decision, and it filed a cross-claim against the Secretary of Transportation challenging the decision that § 30166(m)(4)(C) is not an Exemption 3 withholding statute.

On March 31, 2006, the district court held that NHTSA was authorized to make categorical determinations regarding the confidentiality of EWR data. *Id.* at 13-14. But it also found that the agency had failed to provide adequate notice and opportunity to comment as required by the APA. *Id.* at 16-17. The court remanded the rule to the agency without reaching the parties' other claims, including RMA's cross-claim that § 30166(m)(4)(C) is a withholding statute for purposes of FOIA Exemption 3. *Id.* at 17. RMA then filed a motion to alter or amend the judgment, asking the court to address its Exemption 3 cross-claim.

On July 31, 2006, the district court granted RMA's motion to alter or amend, but ruled against RMA on the merits. The court upheld NHTSA's decision that § 30166(m)(4)(C) is not an Exemption 3 statute. It did so on the ground that the section neither "'establishes particular criteria for withholding'" nor "'refers to particular types of matters to be withheld.'" *Public Citizen, Inc. v. Mineta*, 444 F. Supp. 2d 12, 16-18 (D.D.C. 2006) (quoting 5 U.S.C. § 552(b)(3)). Determining that there was "no just reason for delay," the court entered a final judgment on RMA's cross-claim pursuant to Federal Rule of Civil Procedure 54(b). RMA now appeals the district court's holding that § 30166(m)(4)(C) is not an Exemption 3 withholding statute. That is the only issue before this court.

II

With specific exceptions, the Freedom of Information Act requires Executive Branch agencies to make their records available "to any person" upon request. 5 U.S.C. § 552(a)(3)(A). FOIA was intended "to provide for open disclosure of public information," *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982), and it has long been understood to create a "strong presumption in favor of disclosure," *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). "Although Congress enumerated nine exemptions from the disclosure requirement, 'these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.'" *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Accordingly, FOIA's exemptions are to be narrowly construed. *Id.*

As noted in Part I, FOIA Exemption 3 permits the government to withhold information "specifically exempted from disclosure by statute[,] . . . provided that such statute (A)

requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). A statute need only satisfy one of these disjunctive conditions to qualify as an Exemption 3 statute. *See Association of Retired R.R. Workers v. United States R.R. Ret. Bd.*, 830 F.2d 331, 334 (D.C. Cir. 1987). Before a court inquires into whether any of the conditions are met, however, it must first determine whether the statute is a withholding statute at all by deciding whether it satisfies "the threshold requirement that it *specifically exempt* matters from disclosure." *Reporters Comm. for Freedom of the Press v. United States Dep't of Justice*, 816 F.2d 730, 734 (D.C. Cir. 1987) (emphasis added), *rev'd on other grounds*, 489 U.S. 749 (1989).

The question on appeal is whether § 30166(m)(4)(C) is a withholding statute for purposes of FOIA Exemption 3. According to the Secretary, "[j]udicial deference is neither sought nor owed to the agency's interpretation of the TREAD Act's disclosure provision as ineligible for treatment under FOIA Exemption 3," and this court should therefore make its own determination de novo. Secretary Br. 12 (citing, inter alia, *Reporters Comm.*, 816 F.2d at 734). RMA and Public Citizen concur. *See* RMA Br. 20; Public Citizen Br. 27. In Part III, we explain our determination that § 30166(m)(4)(C) does not come within the purview of Exemption 3. In Part IV, we consider RMA's arguments to the contrary.

III

Section 30166(m)(4)(C) states:

> None of the information collected pursuant to the final [EWR rule] shall be disclosed pursuant to section

30167(b) unless the Secretary determines the disclosure of such information will assist in carrying out sections 30117(b) and 30118 through 30121.

49 U.S.C. § 30166(m)(4)(C).  According to RMA, this means that no EWR data may be disclosed -- under any statute, including FOIA -- unless the Secretary makes the specified determination with respect to §§ 30117(b) and 30118-21.  Those sections set forth rules relating to defect and noncompliance notifications and remedies.  RMA contends that, because "the EWR data submitted pursuant to the TREAD Act is 'not necessarily indicative of any problem needing investigation[,]' . . . . the Secretary could make the specified findings about only a small subset of the EWR data in NHTSA's possession."  RMA Br. 22 (quoting Final CBI Rule, 68 Fed. Reg. at 44,218).  Hence, "the vast bulk of EWR data would not qualify for disclosure because it is unrelated to a defect or noncompliance investigation."  *Id.*

If § 30166(m)(4)(C) actually said that no EWR data may be disclosed without the specified determination, it might well be an Exemption 3 withholding statute. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 121-22 (1980).  But § 30166(m)(4)(C) does not say that.  Instead, it says that no EWR data may be disclosed "pursuant to section 30167(b)" without that determination.  49 U.S.C. § 30166(m)(4)(C).  Thus, in order to decide whether § 30166(m)(4)(C) is an Exemption 3 statute, it is necessary to examine § 30167(b).

Section 30167(b) states in full:

Subject to subsection (a) of this section, the Secretary shall disclose information obtained under this chapter related to a defect or noncompliance that the Secretary decides will assist in carrying out sections 30117(b)

and 30118-30121 of this title or that is required to be disclosed under section 30118(a) of this title. A requirement to disclose information under this subsection is in addition to the requirements of section 552 of title 5 [FOIA].

*Id.* § 30167(b).[2] Section 30167(b) thus creates a mandatory disclosure requirement: it obligates the Secretary to disclose information obtained under the Safety Act when doing so will assist in carrying out §§ 30117(b) and 30118-21, the same sections cited in § 30166(m)(4)(C). It is a requirement that applies whether or not any member of the public has requested the information. And, as the section states, it is a "requirement to disclose information [that is] in addition to the requirements of" FOIA.

It is therefore plain that § 30166(m)(4)(C) does *not* mean that no EWR data may be disclosed without the specified Secretarial determination. Rather, it provides that EWR data is not subject to the Secretary's mandatory obligation to disclose information pursuant to § 30167(b) -- whether requested or not -- unless the Secretary makes that determination. Accordingly, § 30166(m)(4)(C) cannot be a FOIA Exemption 3 statute because it does not "specifically exempt[]" certain matters "from disclosure." 5 U.S.C. § 552(b)(3). At most, it specifically exempts EWR data from disclosure under § 30167(b), a section that expressly states that its disclosure requirement is "in addition to the requirements of" FOIA.

---

[2]"Subsection (a)," referenced in § 30167(b), limits the way in which confidential information referred to in 18 U.S.C. § 1905 (the Trade Secrets Act) may be disclosed. *See* 49 U.S.C. § 30167(a). The parties do not argue that this subsection informs the meaning of § 30167(b) or § 30166(m)(4)(C) as relevant here. *See* Oral Arg. Recording at 43:20-25; *see also id.* at 12:27-13:02, 26:08-55.

The fact that § 30166(m)(4)(C) simply limits disclosures that § 30167(b) requires the Secretary to make sua sponte distinguishes that section from the statute the Supreme Court found to be an Exemption 3 withholding statute in *GTE Sylvania*, 447 U.S. 102. In that case, the Court considered the Consumer Product Safety Commission's contention that the disclosure prohibitions of § 6(b)(1) of the Consumer Product Safety Act (CPSA), 15 U.S.C. § 2055(b)(1), are "limited to disclosures initiated by the Commission" and do not apply to disclosures requested under FOIA. *Id.* at 108. After examining the language of the Act, the Court rejected that contention because § 6(b)(1) "by its terms applies to the 'public disclosure of *any* information' obtained by the Commission pursuant to its authority under the CPSA, and to any information 'to be disclosed to the public in connection therewith.'" *Id.* (emphasis in original) (quoting 15 U.S.C. § 2055(b)(1)).

Unlike § 6(b)(1) of the CPSA, § 30166(m)(4)(C) does not state that it applies to "public disclosure of any information," but instead states that it applies to "disclos[ure] pursuant to section 30167(b)." It therefore cannot be read to limit the agency's obligations to disclose EWR data under FOIA -- especially given the FOIA savings provision at the end of the latter section. Because § 30166(m)(4)(C) does not meet the threshold criterion for qualification as an Exemption 3 statute -- i.e., that it "specifically exempt[]" EWR data from disclosure -- we do not need to consider whether the statute meets the additional conditions of 5 U.S.C. § 552(b)(3)(A) or (B).

IV

RMA offers three reasons why the reading of § 30166(m)(4)(C) set forth above -- that the section only applies to disclosures pursuant to § 30167(b) -- cannot be correct. We address those arguments below.

A

RMA first contends that this reading of § 30166(m)(4)(C) violates the canon of statutory construction that instructs courts to give effect to all statutory language when it is reasonable to do so.  Before addressing this contention, we note the Supreme Court's frequent reminder that

> canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others.  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last:  judicial inquiry is complete.

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal quotation marks omitted) (citing, inter alia, *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-42 (1989), and *Rubin v. United States*, 449 U.S. 424, 430 (1981)).  As we have noted, the words of § 30166(m)(4)(C) are unambiguous:  it applies, as it says it does, to disclosures made "pursuant to section 30167(b)."  Under these circumstances, "'we have no need to employ, nor any legitimate purpose in employing, canons of construction designed to reconcile confusing language.'"  *Atkinson v. Inter-American Dev. Bank*, 156 F.3d 1335, 1341 (D.C. Cir. 1998) (quoting *United States v. Espy*, 145 F.3d 1369, 1371 (D.C. Cir. 1998)).  In any event, we conclude that RMA's canon-of-construction argument fails on its own terms.

RMA argues that a change in statutory language must "'be read, if possible, to have *some effect*,'" RMA Br. 30 (emphasis

added by RMA) (quoting *American Nat'l Red Cross v. S.G.*, 505 U.S. 247, 263 (1992)), and that § 30166(m)(4)(C) would have no independent effect if all it did were limit disclosures pursuant to § 30167(b). Section 30167(b) itself requires disclosure of all defect and noncompliance "information obtained under this chapter" -- which after the TREAD Act amendment includes EWR data -- that the Secretary determines will assist in carrying out §§ 30117(b) and 30118-21. RMA contends that, because § 30166(m)(4)(C) states that EWR data may not be disclosed pursuant to § 30167(b) unless the Secretary makes that same determination, it limits only the same disclosures that § 30167(b) itself limits. Hence, if § 30166(m)(4)(C) only affects disclosures under § 30167(b), it has no independent effect.

For § 30166(m)(4)(C) to have an independent effect, RMA continues, it must limit disclosures made pursuant to any statute -- including FOIA -- and not simply those made pursuant to § 30167(b). Thus, RMA maintains, § 30166(m)(4)(C) must be read as requiring that "disclosure of EWR data is to be made 'pursuant to' § 30167(b), *or not at all*." RMA Reply Br. 18 (emphasis added); *see* RMA Br. 36 (same). That is, "EWR data may be released *only* pursuant to" § 30167(b). RMA Br. 35 (emphasis added).

The principal problem with RMA's reading is that the italicized words do not appear in the statute. As the Supreme Court has cautioned, "our preference for avoiding surplusage constructions is not absolute." *Lamie v. United States Tr.*, 540 U.S. 526, 536 (2004). While a court should, "'if possible,' . . . construe a statute so as to give effect to 'every clause and word,' . . . . [n]o canon of construction justifies construing the actual statutory language beyond what the terms can reasonably bear." *Amoco Prod. Co. v. Watson*, 410 F.3d 722, 733-34 (D.C. Cir. 2005) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)). RMA asks us to do just that, by adding words that are

not in the statute that the legislature enacted. *See United States v. Monsanto*, 491 U.S. 600, 611 (1989) ("[I]nterpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature." (internal quotation marks omitted)). Congress knows well how to say that disclosures may be made *only* under specified provisions or circumstances,[3] but it did not do so here. As then-Judge Roberts said with respect to a similar argument in the *Amoco* case, any "inference to be drawn from [the canon] does not dissuade us from the more natural reading of the express language" of the statute. 410 F.3d at 733.

Moreover, RMA's construction runs afoul of its own canon. As the Secretary correctly notes, "RMA's argument reads the pivotal clause 'pursuant to section 30167(b)' out of section 30166(m)(4)(C)." Secretary Br. 20. Indeed, deleting the clause from § 30166(m)(4)(C) altogether would create precisely the meaning upon which RMA insists -- i.e., that "[n]one of the information collected pursuant to the final [EWR rule] shall be disclosed ~~pursuant to section 30167(b)~~ unless the Secretary" makes the specified determination. But such a deletion would directly contradict a canon that counsels us to give effect to

---

[3]*See* 49 U.S.C. § 30117(b)(1) (mandating that NHTSA's regulations "provide reasonable assurance that a customer list . . . will be made available to a person . . . *only* when necessary to carry out this subsection and [other listed sections]" (emphasis added)); *see also* 5 U.S.C. § 9101(d) ("Criminal history record information received under this section shall be disclosed or used *only* for the purposes set forth in paragraph (b)(1) or for national security or criminal justice purposes authorized by law . . . ." (emphasis added)); 10 U.S.C. § 616(e) ("The recommendations of a selection board may be disclosed *only* in accordance with regulations prescribed by the Secretary of Defense." (emphasis added)); 15 U.S.C. § 78u(h)(9)(B) ("Financial records or information transferred by the Commission . . . . may be disclosed or used *only* in an administrative, civil or criminal action or investigation . . . ." (emphasis added)).

"every clause and word." *Menasche*, 348 U.S. at 538-39; *see TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

We also doubt the premise of RMA's argument -- that reading § 30166(m)(4)(C) to apply only to disclosures pursuant to § 30167(b) denies the section any purpose. Although we cannot know for certain what purpose Congress had in mind, at least two are possible.

First, the section may serve to fill a logical gap in § 30167(b). The latter states that the Secretary, acting on her own and without a FOIA request, *shall* disclose information *if* she determines that it will assist in carrying out the other specified sections. But § 30167(b) does not necessarily compel the inverse proposition: that the Secretary (again, acting on her own and without a FOIA request) *shall not* disclose information *unless* she makes such a determination. As we have noted, "[t]he legal maxim *expressio unius est exclusio alterius* ('the mention of one thing implies the exclusion of another') is not always correct." *In re Sealed Case*, 181 F.3d 128, 132 (D.C. Cir. 1999). Because it is thus unclear from the language of § 30167(b) alone whether the Secretary may, in the absence of a FOIA request, disclose information without making the specified determination, § 30166(m)(4)(C) serves to fill that lacuna for EWR data by making clear that such data may not be disclosed unless the Secretary makes that determination. This reconciles the affirmative language of § 30166(m)(4)(C) and the negative language of § 30167(b), while giving effect to both.

Second, § 30166(m)(4)(C) may also serve to provide useful clarification. Manufacturers did not have to report EWR data under the Safety Act of 1966, which included § 30167(b). It was not until 34 years later, with the passage of the TREAD Act, that manufacturers were required to report EWR data to NHTSA. It may well be, as RMA maintains, that "EWR data

would still have been subject to disclosure under § 30167(b) pursuant to Secretarial findings" even "if § 30166(m)(4)(C) had been omitted entirely from the TREAD Act." RMA Reply Br. 14. But it is also true, as NHTSA suggests, that § 30166(m)(4)(C) makes clear that this is so. Oral Arg. Recording at 39:21-49. In addition, as the district court found, § 30166(m)(4)(C) "reemphasizes, and clarifies, that if any of the EWR data that relates to defects or noncompliance is going to be released in accordance with Section 30167(b), the Secretary must first determine that the disclosure of such information will assist in carrying out other sections" of the statute. *Public Citizen*, 444 F. Supp. 2d at 18. As the Supreme Court has recognized, a provision that may at first glance appear to be textual surplusage, may in fact "perform[] a significant function simply by clarifying." *United States v. Atlantic Research Corp.*, 127 S. Ct. 2331, 2337 (2007). That a provision was intended to serve such a function may be more likely when it was enacted many years after the provision it is accused of duplicating. *Cf. Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996). It is certainly not unreasonable to believe that Congress added § 30166(m)(4)(C) to clarify that § 30167(b) applies to the new categories of reportable data that the TREAD Act created.

Given the explicitness of § 30166(m)(4)(C)'s language, the "first canon" of statutory construction -- "that courts must presume that a legislature says in a statute what it means and means in a statute what it says" -- is also the last canon that we need to consult in this case. *Connecticut Nat'l Bank*, 503 U.S. at 253-54 (internal quotation marks omitted). Even so, consultation of the canon proffered by RMA does not yield a different result.

B

RMA also contends that the legislative history of the TREAD Act requires us to interpret § 30166(m)(4)(C) as an Exemption 3 withholding statute that limits disclosures under FOIA.  But as with canons of construction, when a statute's "language is plain on its face, courts do not ordinarily resort to legislative history."  *Saadeh v. Farouki*, 107 F.3d 52, 57 (D.C. Cir. 1997); *see Lamie*, 540 U.S. at 534; *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n.3 (1989).  And as we have explained, § 30166(m)(4)(C)'s language is quite plain.  Moreover, legislative history is a particularly weak reed on which to rest in this context, as this court has long disfavored the use of legislative history to determine whether a statute qualifies as a withholding statute under Exemption 3.  *See Norton*, 309 F.3d at 38; *Reporters Comm.*, 816 F.2d at 735.[4]

Even if we were inclined to look to legislative history for guidance in this case, there is little that is useful here.  The only legislative history to which RMA points is a brief colloquy between Representatives Markey and Tauzin during a House debate on the TREAD Act, *see* RMA Br. 25-26 (citing 146 Cong. Rec. H9629 (daily ed. Oct. 10, 2000)), and a request by Senator McCain that the Representatives' colloquy be included in the Senate record, *see* Oral Arg. Recording at 14:53-15:17 (citing 146 Cong. Rec. S10,273 (daily ed. Oct. 11, 2000)).  We ordinarily do not give controlling weight to such colloquies.  *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002) ("Floor

---

[4]We acknowledge RMA's point that on occasion the Supreme Court has considered a statute's legislative history *to support* its textual conclusion that Congress intended to protect certain information from disclosure under FOIA.  *See Baldrige*, 455 U.S. at 355-58; *GTE Sylvania*, 447 U.S. at 111-16.  But there is no text to which such support may be attached in this case.

statements from two Senators cannot amend the clear and unambiguous language of a statute. We see no reason to give greater weight to the views of two Senators than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text."); *see also Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 467 (D.C. Cir. 1998); *Chemical Mfrs. Ass'n v. EPA*, 919 F.2d 158, 164 n.10 (D.C. Cir. 1990).

Nor does this particular colloquy tell us much about these three legislators' views. The colloquy, which is set out in the footnote, does not mention FOIA generally or Exemption 3 specifically.[5] Thus, although the two House members agree that § 30166(m)(4)(C) provides that EWR information "shall be treated as confidential unless the Secretary makes a finding that its disclosure would assist in ensuring public safety," 146 Cong.

---

[5] [Mr. MARKEY.] To protect the confidentiality of this new early stage information, the bill provides in Section 2(b) in the subsection titled 'disclosure' that such information shall be treated as confidential unless the Secretary makes a finding that its disclosure would assist in ensuring public safety, but with respect to information that NHTSA currently requires be disclosed to the public it is my understanding of the committee's intention that we not provide manufacturers with the ability to hide from public disclosure information which under current law must be disclosed. Would the gentleman from Louisiana (Mr. TAUZIN) agree that this special disclosure provision for new early stage information is not intended to protect from disclosure that [which] is currently disclosed under existing law such as information about actual defects or recalls?
. . .

[Mr. TAUZIN.] Mr. Speaker, the gentleman is correct.

146 Cong. Rec. H9629.

18

Rec. H9629, this does little more than repeat the statutory language and does not resolve the question of whether such confidential treatment is for the purpose of disclosure under FOIA as well as § 30167(b). Moreover, the statement of Senator McCain, to which RMA pointed during oral argument, appears to undermine the reading RMA advocates. That statement expresses the Senator's "strong[] disagree[ment]" with assertions "that the bill would inhibit the release of information collected by Department of Transportation to the public," and asks that the Markey/Tauzin colloquy be included in the record to "refute these assertions." 146 Cong. Rec. S10,273.

C

Finally, RMA argues that failing to interpret § 30166(m)(4)(C) as a withholding statute will have negative consequences. It states that, because the EWR data "includes mere allegations of a design defect, even when a factfinder would ultimately conclude that no defect existed," the release of such data "could cause the public to believe that fatalities were caused by 'defects' in a particular manufacturer's product at a much higher rate than actually occurred." RMA Br. 27. And it avers that, "[i]n light of the very real probability that unfiltered EWR data would cause public misunderstanding and confusion with potentially adverse competitive effects for the manufacturers providing the data," it would be "sensible for Congress to prevent the release of the data except in circumstances where the Secretary uses her expertise to determine that release of the data will further the goals of the act." *Id.* at 28-29 (emphasis omitted).

To the extent that this is an argument about legislative intent, RMA points to neither legislative language nor history indicating that § 30166(m)(4)(C) was meant to address such concerns. To the extent that it is an argument about public

policy, it is addressed to the wrong audience. Although RMA's arguments are well and vigorously presented, only Congress has the authority to provide the relief it seeks.

## V

In sum, § 30166(m)(4)(C) does not meet the threshold criteria for a FOIA Exemption 3 statute, because it does not "specifically exempt[]" EWR data from disclosure. Rather, the plain language of § 30166(m)(4)(C) makes clear that it applies to disclosures "pursuant to section 30167(b)," and the latter provision makes clear that such disclosures are "in addition to" disclosures required by FOIA. This does not, of course, end the FOIA analysis, as the question of whether certain categories of EWR information are protected from disclosure under FOIA Exemption 4 remains pending and is not before us. It does, however, dispose of the only matter at issue on this appeal. As to that issue, the judgment of the district court is

*Affirmed.*